Citation Nr: 1508813 
Decision Date: 02/27/15 Archive Date: 03/11/15

DOCKET NO. 10-06 745 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Nashville, Tennessee


THE ISSUES

1. Entitlement to service connection for diabetes mellitus, to include as due to exposure to Agent Orange. 

2. Entitlement to service connection for cataracts, to include as secondary to service-connected disability. 

3. Entitlement to service connection for hypertension, to include as secondary to service-connected disability. 

4. Entitlement to service connection for impotency, to include as secondary to service-connected disability. 

5. Entitlement to service connection for vascular disease, to include as secondary to service-connected disability. 

6. Entitlement to service connection for coronary artery disease. 


REPRESENTATION

Veteran represented by: Ronald C. Sykstus, Attorney at Law


WITNESS AT HEARING ON APPEAL

Veteran


ATTORNEY FOR THE BOARD

Debbie A. Breitbeil, Counsel


INTRODUCTION

The appellant is a Veteran who served on active duty from July 1965 to August 1966. This case originally came before the Board of Veterans' Appeals (Board) on appeal from August 2009 and July 2011 rating decisions by a Department of Veterans Affairs (VA) Regional Office (RO) in Nashville, Tennessee. 

The August 2009 rating decision denied service connection for the six disabilities listed on the first page of this document, as well as service connection for depression; the July 2011 rating decision denied the Veteran's application to reopen a claim of service connection for chronic obstructive pulmonary disease (COPD) and a claim for a total rating based on individual unemployability due to service-connected disability (TDIU). 

In a May 2013 decision, the Board determined that new and material evidence had not been presented to reopen a claim of service connection for COPD and denied service connection for six other disabilities (diabetes mellitus, cataracts, coronary artery disease, hypertension, impotency, and vascular disease). The Board also remanded the case to the RO for additional development on the claims of service connection for depression and of a TDIU. The Veteran appealed that decision to the United States Court of Appeals for Veterans Claims (Court). In an August 2014 Memorandum Decision, the Court affirmed the Board's decision in part with regard to the COPD claim, and vacated the Board's decision in part with regard to the six service connection claims, remanding such matters to the Board for additional proceedings consistent with the Memorandum Decision. The issues remanded by the Board - service connection for depression and a TDIU - were not before the Court. The Board notes that some development has been accomplished on these matters, but the RO has not readjudicated them. Therefore, while still in appellate status, they are not properly before the Board for its review. 

As noted in the May 2013 Board decision, the issues of entitlement to benefits under 38 U.S.C.A. § 1805 (West 2002) for a child born with spina bifida, and of entitlement to service connection for basal cell carcinoma of the face, have been raised by the record but have not been adjudicated by the Agency of Original Jurisdiction (AOJ). Therefore, the Board does not have jurisdiction over them, and they are referred to the AOJ for appropriate action. 38 C.F.R. § 19.9(b) (2014). 

The appeal is REMANDED to the AOJ. VA will notify the Veteran if further action is required.


REMAND

In its August 2014 Memorandum Decision, the Court vacated the Board's May 2013 decision regarding the Veteran's claims of service connection for diabetes mellitus and coronary artery disease. As the other claims of service connection (for cataracts, hypertension, impotency, and vascular disease, to include on a secondary basis) are inextricably intertwined with the Veteran's diabetes and coronary artery disease claims, they were likewise vacated. The Court determined that the Board failed to discuss various documents submitted by the Veteran, which tended to support his assertion that he was exposed to herbicides during service. Those documents (initially submitted in January 2009) included information from newspapers and internet sources that indicated herbicides were used and stored in various countries including Guam and Subic Bay Naval Base in the Philippines; two additional articles (submitted in December 2012) also noted toxic contamination surrounding Clark Air Force Base. Other than exposure while on the USS Worden and USS Enterprise, the Veteran has maintained that he came into contact with herbicides in Guam, Subic Bay, and Clark Air Force Base in the Philippines, asserting that he was in Subic Bay for three to six weeks on a work detail that took him in and out of the jungle. He asserted that he then went to Clark Air Force Base before returning to the U.S.

The RO undertook development to confirm the Veteran's allegations of exposure to herbicides outside of the Republic of Vietnam. For example, in May 2009, the National Personnel Records Center (NPRC) found no evidence of exposure. In July 2009, VA's C&P Service found that documents from the Department of Defense did not shown any use, testing, or storage of tactical herbicides at any location in the Philippines or on Guam (except for storage on Guam from 1951 to 1953). Then, in August 2009, the Joint Service Records Research Center (JSRRC) reported that it was not able to locate documents to verify storage or use of Agent Orange in Subic Bay or Guam during 1966. It is notable that the JSRRC did not make any comment in reference to herbicides at Clark Air Force Base. 

VA has set forth procedures in its Adjudication Procedures Manual, M21-1MR, part IV, subpart ii, 2.C.10.o, for the verification of herbicides in areas outside of Republic of Vietnam, providing at least two locations where VA is to obtain information regarding such potential herbicide exposure, namely, the VA Compensation Service and JSRRC. Here, while records were requested from VA's C&P (Compensation and Pension) Service using information incorporating all the Veteran's alleged exposure sites, it does not appear that the same information was made available to the JSRRC. In other words, it appears that the request to the JSRRC was incomplete insofar as it did not ask about the potential transportation, use, and storage of herbicides at Clark Air Force Base, one of the areas where the Veteran claims he was exposed to herbicides. In light of this, development consistent with the M21-1MR should be undertaken, to include asking the Veteran for more details about his alleged exposure (i.e., the approximate dates, location, and nature of exposure).

Accordingly, the case is REMANDED for the following action:

1. Send the Veteran a request that he describe the nature of his alleged exposure to herbicide at Clark Air Force Base, the Republic of the Philippines. 

2. Contact the JSRRC and seek verification of the Veteran's alleged herbicide exposure at Clark Air Force Base, forwarding any detailed descriptions of his alleged exposure and the approximate dates of his presence there as determined through a review of his service personnel records. The results of this development should be documented. 

3. After the completion of the above development, readjudicate the claims, to include particular consideration of the documents (from newspapers and internet sources) submitted by the Veteran in January 2009 and December 2012 that pertain to herbicide use/storage in Guam and Subic Bay (the Republic of the Philippines) and to toxic contamination around Clark Air Force Base (the Republic of the Philippines). If they remain denied, furnish the Veteran and his attorney an appropriate supplemental statement of the case, afford them opportunity to respond, and return the case to the Board.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
M. C. GRAHAM
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of the Veteran's appeal. 38 C.F.R. § 20.1100(b) (2014).